UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GALE LYNN FISHELL,

    Petitioner,

v.

                                Case No. 1:06-cv-9
                                Hon. Robert J. Jonker

KURT JONES,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.**    **Background**

A jury convicted petitioner of second-degree murder, M.C.L. § 750.317, felon in possession of a firearm, M.C.L. § 750.224f, and felony-firearm, M.C.L. § 750.227b. *People v. Gale Lynn Fishell*, No. 230878 (Mich. App. April 3, 2003). He was sentenced to a term of 20 to 40 years for the murder conviction, 38 to 60 months for the felon in possession of a firearm conviction, and a consecutive two-year term for the felony-firearm conviction. *Id.*

The Michigan Court of Appeals summarized that events giving rise to this offense as follows:

> It is uncontroverted that the victim, who was a friend of defendant's, was shot nine times with a semi-automatic gun. There was evidence that defendant was intoxicated. Defendant gave varying accounts of what transpired. He told his former girlfriend that he had gotten into a fight with the victim and had shot him. He told a friend that someone he knew had pulled a gun on him and he shot him. He told police that he had handed the gun to the victim when it accidentally discharged. He also told police that he picked up the gun to show the victim, that both were drunk,

that he handed the gun to the victim and that they started to wrestle over it when it fired. He also suggested that he may not have been touching the gun when it discharged. He also stated that he got the gun to show the victim and that he was standing in the living room when he heard a loud noise and saw that the victim was against the couch, shot bad. He said he leaned the gun against the wall, but did not remember shooting the victim. He also said that they had been drinking, that there was an argument, and that he picked up the gun and shot the victim. He then said that he did not remember shooting the victim, and did not think that he did. He also stated that the victim may have had a gun or a knife, and he may have been defending himself. He concluded by repeating that he heard a noise and did not remember shooting the victim.

Defendant introduced evidence through a firearms expert that although the gun was semiautomatic and required that the trigger be pulled nine times to expel nine bullets, the trigger would only have to be depressed 1/4 to 1/2 inch, nine shots could be fired in 1.8 seconds, and inexperienced shooters commonly have less difficulty firing such a weapon quickly and think the "gun has gone full automatic because they don't realize they are pulling the trigger it happens so quickly."

The prosecutor's theory was that defendant intentionally shot the victim in the torso nine times. Defendant's theory, as presented in opening statement, was that defendant and the victim were friends and had spent the day together drinking, and that defendant was too intoxicated to accurately report what had happened, but that he did not intend to kill the victim, to do great bodily harm to the victim or to knowingly create a very high risk of death or great bodily harm. Defense counsel stated that it would be reasonable for the jury to find that there was careless discharge of a firearm causing death. In closing argument, defense counsel argued that the prosecutor had not proved beyond a reasonable doubt that defendant had any of the three intents necessary to convict of second-degree murder.

*People v. Gale Lynn Fishell*, No. 230878, slip op. at 1-2.

Petitioner presented the following five issues in his direct appeal to the Michigan Court of Appeals:

I. Was [petitioner] denied his right to a properly instructed jury where the trial court not only refused the defense request to instruct on manslaughter and reckless discharge of a firearm, but also effectively directed a verdict of guilty by affirmatively excluding those verdicts?

   A. Was the trial court's failure to read lesser included offense instructions erroneous?

       B.      Given the evidence and arguments of counsel, did the trial court also err here because its instructions effectively directed a verdict of guilt of second degree murder?

  II.      Was [petitioner] denied his constitutional right to the effective assistance of counsel where his trial attorney failed to request an instruction on statutory involuntary manslaughter, despite requesting other lesser included offense instructions?

  III.      Must [petitioner's] judgment of sentence be amended because his sentence for felony firearm was erroneously imposed consecutively to his conviction for felon in possession?

*See* Brief on Appeal (docket no. 25).

Petitioner filed a *pro se* supplemental brief raising the following issue:

  IV.      Was [petitioner's] right to effective assistance of counsel and right to trial violated where at trial counsel conceded [petitioner's] guilt to the crimes charged?

*See* Supplemental Brief on Appeal (docket no. 25).

The Michigan Court of Appeals affirmed the conviction. *People v. Gale Lynn Fishell*, No. 230878. However, the court agreed with petitioner that trial court erred in ordering that his felony-firearm sentence be served consecutively to his felon in possession sentence as well as his sentence for second-degree murder, and remanded for correction of the sentence. *Id.*, slip op. at 5-6.

Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied. *People v. Gale Lynn Fishell*, No. 123959 (Mich. Dec. 29, 2003). In reaching this determination, two members of the court would have remanded the matter to the Michigan Court of Appeals "for reconsideration of the issue of whether defense counsel was ineffective for failing to request an instruction on involuntary manslaughter." *Id.*

Petitioner then filed a motion for relief from judgment in the trial court, pursuant to MCR 6.500 et seq., raising six new issues:

I. Was [petitioner's] retained counsel and court appointed appellate counsel ineffective within the meaning of the Sixth Amendment to the United States Constitution and Const 1963, Art § 20, based on the cumulative errors reported within this issue?

II. Was [petitioner] denied his fundamental right to due process as guaranteed under both state and federal constitutions, and prejudiced when the prosecution permitted [petitioner's] inadmissible and involuntary confession -- which was extracted by law enforcement -- before the jury at [petitioner's] trial?

III. Was [petitioner] denied his fundamental due process and equal protection rights as guaranteed under both the Michigan and United States Constitutions, when the trial court failed to control the proceedings at all times during [petitioner's] criminal proceedings?

IV. Was [petitioner] denied his fundamental right to due process as guaranteed under both state and federal constitutions as a result of the cumulative effect of reported errors committed before, during and after [petitioner's] trial, and on [petitioner's] right of appeal?

V. Has [petitioner] not only satisfied the "cause" and "prejudice" requirements, but that a fundamental miscarriage of justice has occurred to support [petitioner's] actual innocence of the instant criminal convictions?

*See* docket no. 27.

The trial court summarized petitioner's claims as follows:

The [petitioner] now asks for relief from judgment under MCR 6.502, claiming the appellate courts were wrong, and that appellate counsel was ineffective in not claiming ineffective assistance of trial counsel for failure to request a Walker Hearing, because [petitioner's] confession was involuntary due to intoxication. It is also alleged that the Prosecutor and the Court failed in their duties, by not initiating a Walker Hearing.

4

*People v. Gale Lynn Fishell*, No. 00-011896-FC (Van Buren Cir. Ct. Dec. 29, 2004) (Order Denying Motion for Relief from Judgment).[1] The trial court denied the motion. *Id.*

Petitioner filed a delayed application for leave to appeal, raising the same five issue, which the Michigan Court of Appeals denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Gale Lynn Fishell*, No. 260889 (Mich. App. Aug. 16, 2005). Petitioner then filed application for leave to appeal to the Michigan Supreme Court, raising these five issues, which that court also denied for failing "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Gale Lynn Fishell*, No. 129447 (Mich. Nov. 29, 2005).

This matter is now before the court on petitioner's amended habeas petition, which raises the five issues as set forth in his motion for relief from judgment, phrased as follows:

I. Ineffective defense and appellate counsel.

II. Prosecutorial misconduct by allowing this confession - coerced by law enforcement - before the jury.

III. The trial court failed to control the proceedings at all times.

IV. Petitioner asserts the cumulative effect of errors denied him of a fair trial and appeal.

V. Petitioner is actually innocent of the crime of 2nd degree murder.

---

[1] A "*Walker* hearing" refers to *People v. Walker*, 374 Mich. 331, 338, 132 N.W.2d 87 (1965), in which the Michigan Supreme Court held that when a defendant challenges the admissibility of his statements, the trial court must hear testimony, outside the presence of the jury, regarding the circumstances in which the statements were given.

**II.     Standard of review under 28 U.S.C. § 2254**

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v.*

*Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III. Procedural default

#### A. Procedural default and claims of ineffective assistance of appellate counsel

Respondent contends that petitioner's claims are procedurally defaulted and not subject to federal habeas review. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be

7

applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal the order for relief from judgment because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The Sixth Circuit has held that a criminal defendant's failure to meet the requirements of MCR 6.508(D) constitutes a procedural default for purposes of a federal habeas action. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) precludes habeas review. *See Howard*, 405 F.3d at 477; *Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407.

An exception to the MCR 6.508(D) procedural default rule applies to a claim for ineffective assistance of appellate counsel regarding the direct appeal. Because state collateral review under MCR 6.500 *et seq.* is the first opportunity for a criminal defendant to address the issue of ineffective assistance of appellate counsel, this issue is not subject to the procedural default

8

doctrine. *See Whiting v. Burt*, 395 F.3d 602, 614 (6th Cir. 2005); *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004); *Tucker v. Renico*, 317 F.Supp.2d 766, 773 (E.D. Mich. 2004).[2]

Here, petitioner has raised six claims of ineffective assistance of appellate counsel. Petitioner raises two claims of ineffective assistance in Issue I. First, petitioner contends that appellate counsel failed to protect his due process rights by failing to raise the "dead bang winner" issue of trial counsel's failure to move for a *Walker* hearing. Pet. at 6.[3] Second, petitioner contends that "Appellate Counsel failed in his overarching duty to protect Petitioner's interests in that he never contacted Petitioner to inquire as to any potential 'OFF RECORD' issues to be considered for his appeal of Right." *Id.* at 7. Then, petitioner sets forth a generic claim that "Appellate Counsel did not raise any of the issues in this pleading on Petitioner's right of appeal" with respect to Issues II, III, IV and V. *Id.* at 16, 23, 27-28. Accordingly, all of petitioner's claims are procedurally defaulted

---

[2] As the Sixth Circuit explained in *Hicks*:

> In denying petitioner's motion for relief from judgment, the state trial court decided petitioner's ineffective-assistance-of-appellate-counsel claim against petitioner-albeit without any reasoning. Thus, when the Michigan Supreme Court denied petitioner leave to appeal this denial under M.C.R. 6.508(D), it was implicitly invoking only subsection (2) with respect to petitioner's ineffective-assistance-of-appellate-counsel claim.
>
> However, as the district court correctly found, M.C.R. 6.508(D)(2) does not constitute a state procedural ground that is adequate to bar federal habeas review. 28 U.S.C. § 2254(b)(1) prohibits a federal court from granting habeas relief to a state prisoner on a federal claim unless that prisoner has exhausted all available remedies in state court with respect to that claim. Thus, a federal court may not justly find that a prisoner procedurally defaulted his federal claim simply by virtue of receiving an adverse judgment on that claim while attempting to exhaust it in state court. Such a doctrinal Catch-22 would effectively foreclose federal habeas relief.

*Hicks*, 377 F.3d at 558 n. 17.

[3] Petitioner set forth his arguments in the "brief" portion of his original habeas petition.

except those raising an independent claim of ineffective assistance of appellate counsel on the direct appeal.[4]

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Here, petitioner contends that his appellate counsel caused the procedural default by failing to raise these issues on direct appeal. Ineffective assistance of counsel may constitute cause for excusing a procedural default, *see id.*, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment, *see Strickland v. Washington*, 466 U.S. 668 (1984).

Arguably, petitioner contends that the ineffective assistance of appellate counsel was both an independent constitutional error and cause for the procedural default of the other claims raised in his motion for relief from judgment. For this reason, the court will review petitioner's claims of ineffective assistance of appellate counsel as both independent habeas claims and as cause for the procedural default.

---

[4] Respondent's counsel has failed to address this ineffective assistance of appellate counsel exception to the procedural default doctrine, taking the position that all of petitioner's claims are procedurally defaulted.

### B.      The trial court's opinion

The court's analysis of the ineffective assistance of appellate counsel claim begins with the trial court's opinion denying petitioner's motion for relief from judgment, which provides in pertinent part as follows:

<u>OPINION</u>

There is little purpose in reviewing those issues [petitioner] re-asserts that have been raised and ruled on by the trial court, Court of Appeals and Supreme Court. The instructions given by this Court have been challenged on appeal. The conviction has been affirmed. Leave to appeal has been denied. It would be ludicrous to now re-visit those issues, when this Court has already ruled to the contrary.

A newly raised issue is the claim that [petitioner] had ineffective assistance of appellate counsel. Since everything appellate counsel did raise, unsuccessfully, can hardly render him ineffective, the focus of this consideration must rest upon the claimed ineffectiveness of trial and appellate counsel on the Walker hearing issue.

It is important to look at what was in evidence as to admissions, without the statement taken by Detective Spring, and to see what was added by it.

FACTS IN EVIDENCE WITHOUT THE CONFESSION

Trooper Patino was first on the scene at around 6:00 p.m. October 31, 1999, (Tr. V. I p. 132) where Fishell told Patino "he had just killed someone" (Tr. V. I p. 134).

Fishell talked to his girl friend, both over the phone and later in person, and told her he had shot the victim, and it was "something about an argument over motorcycles" (Tr. V. I p. 176) and "they had got in a fight and he shot him" (Tr. V. I p. 179).

Fishell apparently called 911 around 5:25 p.m. indicating someone had been killed at his house (Tr. V. I p. 188), received a phone call from a friend he hadn't talked to in years at 5:39 p.m. (Tr. V. I p. 195) telling him someone he knew had pulled a gun on him and he shot him (Tr. V. I p. 196-198). At 5:48 p.m. he again called 911 (Tr. V. I p. 214).

The pathologist testified that the shots would have to have been from at least 2 1/2 to 3 feet away because of the absence of powder residual (Tr. V. II p. 132-133).

## THE CONFESSION

Fishell, after waiving his Miranda rights, was interview [sic] around 7:45 p.m. (Tr. V. II p. 155) by Detective Spring. He first claimed he had handed the gun to the victim and it accidentally discharged (p. 157), then claimed they were wrestling with the gun, both holding it, when it discharged accidentally (p. 160) and later claimed they were arguing about motorcycles (p. 167) and he got the gun, heard a loud noise, and the victim was shot (p. 168). He at one time said he didn't think he shot the victim (p. 169), or that the victim might have shot himself (p. 169) or that he might have been defending himself (p. 170).

## THE FAILURE TO ATTEMPT TO SUPPRESS THE CONFESSION IS WITHOUT SIGNIFICANCE

[Petitioner] had, before the Detective spoke to him, given multiple versions of what took place at his home when the victim was shot. He told his girl friend that he shot [the victim] over an argument about motorcycles; Squire Burns that he had shot in self defense; the Trooper that he had "just killed someone[;]" and that "someone had been killed at his house" when calling 911. The different versions are much like that which he told Spring several hours later. The duplicity complained of by [petitioner] in his motion was already established by already admitted, admissible evidence. Keeping the confession out would not have helped.

## THERE IS NO EVIDENCE THAT THE STATEMENT WAS INVOLUNTARY

[Petitioner] equates intoxication with involuntariness. The record does not support any such claim. Directly after the incident Fishell responded logically to Trooper Patino's commands at the scene (Tr. V. I p. 132). There was no testimony by any witness that Fishell seemed out of it or unable to make decisions, or understand what was going on around him. To the contrary those that spoke do him did not obseve anything of the sort. Burns talked to him on the phone. Fishell was aware enough to call 911. And most importantly Detective Spring spent considerable time with him and did not observe anything that would support his claim of involuntariness. He claims that because he had a blood alcohol level somewhere under 0.244 but above 0.15, his statement had to be involuntary. However, a reading of his presentence report he attaches to his motion would indicate such blood alcohol levels were "life as usual" for Mr. Fishell. (Exhibit A-2, page 1). He was at the time of this incident on probation for his 7th drunk driving conviction. Two years before the shooting he was driving with a 0.21 blood alcohol level.

To now argue judicial incompetence, breach of prosecutorial ethics, and ineffective representation because neither [trial counsel] nor the Court nor the Prosecutor insisted on a Walker hearing is unfounded. There were no facts to

12

> support it. He was advised of, and waived his Miranda rights. The claim is frivolous.
>
> THE DEFENSE THOUGHT THE CONFESSION WAS HELPFUL
>
> In his own affidavit, Fishell indicates that [trial counsel] thought the confession would help them. Fishell did not take the stand. [Trial counsel] apparently felt it better to let his un-cross examined admissions get in , than to risk creating a possible 1st degree case by putting Fishell on the stand.
>
> Since there is no merit to the Walker Hearing issue, and all other matters have already been addressed on appeal, the motion must be denied.

*People v. Gale Lynn Fishell*, No. 00-011896-FC (Van Buren Cir. Ct. Dec. 29, 2004) (Opinion and Order Denying Motion for Relief from Judgment).

### C.    Ineffective assistance of appellate counsel raised in Issue I

#### 1.    Appellate counsel's failure to raise the *Walker* hearing issue

First, petitioner contends that his appellate counsel was ineffective for failing to raise the *Walker* hearing issue on appeal. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland,* 466 U.S. at 687. In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

> To evaluate a claim of ineffective assistance of appellate counsel, we assess the strength of the claim appellate counsel failed to raise. "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). "If there is a reasonable probability that [the defendant] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700.

*Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis*, 351 F.3d at 745, *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.*

Here, petitioner's appellate counsel recognized that there were few factual issues present, and narrowed the appeal to contest the court's failure to include jury instructions for lesser included offenses, to allege ineffective assistance of trial counsel for failing to request an involuntary manslaughter instruction, and to amend the sentence. These were non-frivolous issues. Counsel was partially successful, securing a remand on the sentencing issue. While appellate counsel did not obtain relief from the Michigan Supreme Court, counsel successfully convinced two

14

justices to remand the matter to the Michigan Court of Appeals on whether defense counsel was ineffective for failing to request an instruction on statutory involuntary manslaughter. The court does not consider these efforts by appellate counsel to be deficient.

In addition, the court can find no reason for appellate counsel to have diluted these stronger arguments with the *Walker* hearing argument. The trial court found that this argument lacked merit. Petitioner contends that he was so intoxicated when he confessed that he could not give a valid *Miranda* waiver. He cites *People v. Davis*, 102 Mich. App. 403, 411; 301 N.W.2d 871 (1980) for the proposition that counsel's failure to move for a Walker hearing was a serious mistake that deprived the defendant of a reasonably likely chance of acquittal. Petitioner believes that this was a "dead bang winner" issue. The court disagrees. "A *Walker* hearing is designed to determine the voluntariness of a defendant's confession." *People v. Prast*, 114 Mich.App. 469, 483, 319 N.W.2d 627 (1982). The fact that petitioner was under the influence of alcohol when he confessed to Detective Springer did not render his confession involuntary. As the court observed in *Prast*,

> The fact that defendant's confession was taken while he was under the influence of drugs or alcohol is not dispositive. Rather, the voluntariness of a defendant's confession is a question of fact which is decided by viewing the totality of the circumstances surrounding the confession.

*Id.* (citations omitted). In addition, as the trial court observed, counsel's failure to move for a Walker hearing did not deprive him of a reasonably likely chance of acquittal. Petitioner made statements to other individuals that he killed someone, and had given various accounts of the events leading up to that occurrence. Petitioner's confession was somewhat duplicative of these other non-custodial statements. Furthermore, trial counsel's strategy apparently included using the confession to buttress the theory that petitioner was so intoxicated that he carelessly discharged the firearm without the intent to kill the victim. *See* Petitioner's Aff. at ¶ 3 (docket 1-2). Under these circumstances, the court concludes that appellate counsel was not deficient for failing to raise the Walker hearing issue on appeal.

### 2. Appellate counsel's failure to contact petitioner

Petitioner contends that appellate counsel was ineffective for failing to contact petitioner to inquire as to any "potential OFF RECORD issues" to be considered for his appeal. Petitioner's sole support for this claim is set forth in his affidavit, which states as follows:

> Court-appointed appellate counsel, Gary Rogers, visited me one (1) time for some thirty (30) minutes. Said counsel did not solicit my ideas, especially any "OFF RECORD" issues, but only came to inform me what my issues would be on appeal.

Affidavit of Gale Lynn Fishell (docket no. 1-2). Petitioner relies on *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429 (1988), in which the Supreme Court observed that

> The appellate lawyer must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal. In preparing and evaluating the case, and in advising the client as to the prospects for success, counsel must consistently serve the client's interest to the best of his or her ability.

*McCoy*, 486 U.S. at 438. While *McCoy* involved the issue of whether appellate counsel could properly determine the existence of adequate grounds for appeal, this description of counsel's duty is equally applicable to the present case. The duties enumerated in *McCoy* do not require appellate counsel to perform an independent investigation in an attempt to discover new appellate issues that are not evident from the record. In addition, while petitioner complains that counsel did not solicit his ideas for "off record" appellate issues, he fails to present any such ideas or "off record" evidence that could form the basis for an appeal. Petitioner could have mentioned additional evidence during the meeting with appellate counsel, or contacted counsel after their meeting to supplement the appeal. Furthermore, it appears to the court that petitioner's claim is disingenuous. While petitioner filed a supplemental appellate brief, he himself failed to raise, or even identify, any such "off record" issues. *See* docket no. 25. Accordingly, appellate counsel was not ineffective on this ground.

### D. Appellate counsel's other errors

Finally, petitioner contends that appellate counsel was ineffective for failing to raise issues II, III, IV and V on appeal. However, petitioner does not provide any argument with respect to these claims other than the conclusory statement that "Appellate Counsel did not raise any of the issues in this pleading on Petitioner's right of appeal." *See* Petition at 16, 23, 27-28. An unsupported allegation of ineffective assistance of counsel fails to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. *See Fountain v. United States*, 211 F.3d 429, 435 (7th Cir. 2000); *United States v. DiTommaso*, 817 F.2d 201, 215 (2nd Cir. 1987); *Campbell v. Greene*, 440 F. Supp.2d 125, 149 (N.D.N.Y. 2006). Furthermore, "[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). Accordingly, both petitioner's independent claims of ineffective assistance of appellate counsel set forth in Issues II, III, IV and V, and his claim that such ineffective assistance was cause for the procedural default of those issues, should be denied.

### E. No fundamental miscarriage of justice

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. *See, e.g. Paffousen v. Grayson*, No. 00-1117,

2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000) ("in order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.

Petitioner offers no such new evidence that he is actually innocent of the crime for which he was convicted. Rather, petitioner admits that he is guilty of involuntary manslaughter, but argues that he is actually innocent of the crime of second degree murder. Amend. Pet. at 12. Petitioner's claim is without merit because it raises a legal issue rather than newly discovered facts A credible claim of actual innocence must be based on reliable evidence not presented at trial. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). "Actual innocence" means factual innocence, not mere legal insufficiency." *Shakoor v. Collins*, 63 F. Supp. 2d 858, 867 (N.D. Ohio 1999), *citing Bousley v. United States*, 523 U.S. 614, 623-24 (1998) and *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Accordingly, petitioner has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, his issues I, II, III , IV and V are procedurally barred and not subject to habeas review.

### IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: January 5, 2009                    /s/ Hugh W. Brenneman, Jr.
                                          HUGH W. BRENNEMAN, JR.
                                          United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). s